UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATIVIA D. FIELDS,                                    Case No. 15-13895

               Plaintiff,                  Denise Page Hood
v.                                                   United States District Judge

COMMISSIONER OF SOCIAL SECURITY,        Stephanie Dawkins Davis
                                                     United States Magistrate Judge
               Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 17, 18)**

## I.   PROCEDURAL HISTORY

### A.   Proceedings in this Court

On November 4, 2015, plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  This case was referred to Magistrate Michael Hluchaniuk for all pretrial purposes.  (Dkt. 5).  The case was subsequently reassigned to the undersigned pursuant to Administrative Order.  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 17, 18).

### B.   Administrative Proceedings

Plaintiff filed the instant claim for disability insurance benefits  and supplemental security income on November 21, 2012, alleging disability

1

beginning September 21, 2012.  (Dkt. 13-2, Pg ID 70).  Plaintiff's claim was initially denied by the Commissioner on April 17, 2013.  *Id*.  Plaintiff requested a hearing, and on May 28, 2014 plaintiff appeared, along with her attorney, before Administrative Law Judge ("ALJ") Patricia S. McKay, who considered the case de novo.  (Dkt. 13-2, Pg ID 90-133).  In a decision dated September 19, 2014, the ALJ found that plaintiff was not disabled.  (Dkt. 13-2, Pg ID 70-85).  Plaintiff requested a review of this decision on September 23, 2014.  (Dkt. 13-2, Pg ID 66).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 15, 2015 .  (Dkt. 13-2, Pg ID 56-58); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** and this matter be **REMANDED** for further proceedings under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1976 and was 36 years old on the alleged onset date. (Dkt. 13-2, Pg ID 83).  The ALJ applied the five-step disability analysis to

plaintiff's claim and found at step one that plaintiff had not engaged in substantial

gainful activity since the alleged onset date.  (Dkt. 13-2, Pg ID 72).  At step two,

the ALJ found that plaintiff's status post open reduction and internal fixation of

C1-2 due to motor vehicle accident with degenerative disc disease of the cervical

spine, degenerative disc disease of lumbar spine, cognitive disorder/anxiety

disorder, and major depressive disorder were severe impairments.  (Dkt. 13-2, Pg

ID 73).  The ALJ also noted plaintiff's hypertension, history of right ankle

fracture, fibromyalgia and anemia, obesity and possible seizure disorder as non-

severe impairments.  *Id.*  At step three, the ALJ found that although the claimant

has degenerative disc disease of the cervical and lumbar spine, she did not exhibit

muscle weakness, accompanied by sensory or reflex loss, nor does she have

ineffective ambulation.  Accordingly, the ALJ found that plaintiff's combination

of impairments did not meet or equal listing 1.04.  (Dkt. 13-2, Pg ID 73-74).  The

ALJ also found that plaintiff's mental impairments did not meet or equal the

listings 12.04 and 12.06.  (Dkt. 13-2, PgID 74).  The ALJ determined that plaintiff

had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, ... the
> claimant has the residual functional capacity to perform
> light work as defined in 20 CFR 404.1567(b) except that
> she must avoid workplace hazards such as moving
> machinery, unprotected heights, and climbing of ladders.
> The claimant can occasionally climb stairs, crouch,
> crawl, kneel, and stoop/bend.  She can occasionally

> operate foot controls. The claimant cannot reach
> overhead with the bilateral upper extremities.  She is
> limited to simple, routine, repetitive work, that is self-
> paced (not production rate pace), and that does not
> require more than occasional contact with supervisors,
> co-workers and the general public.

(Dkt. 13-2, Pg ID 76).  At step four, the ALJ concluded that plaintiff could not

perform any past relevant work as a business analyst, office manager, and dental

assistant and instructor.  (Dkt. 13-2, Pg ID 83).  At step five, the ALJ denied

plaintiff benefits because plaintiff could perform a significant number of jobs

available in the national economy.  (Dkt. 13-2, Pg ID 84-85).

   B.    Plaintiff's Claims of Error

   Plaintiff initially argues that the ALJ erred in her Step Three equivalency

determination.  In that regard, plaintiff contends that the ALJ's analysis and

rejection of the medical opinion in the record was flawed in view of the lack of

any contrary opinions or other expert opinions in the record as to plaintiff's

physical impairments or limitations. *Leach v. Comm'r of Soc. Sec.*, 2013 WL

3946068, at *11 (E.D. Mich. June 11, 2013).  Plaintiff argues that the ALJ issued

her own lay assertion as to limitations, which is contrary to social security rule

("SSR") 96-6p and this circuit's case law.   Plaintiff contends that the ALJ erred in

finding that she does not meet or equal Listings 1.04 disorders of the spine without

any medical opinion.  According to plaintiff, the ALJ impermissibly played doctor

4

by improperly assessing the records and making a step-three equivalence determination without expert opinion evidence.

In this case, the single decision maker model (SDM) was used pursuant to 20 C.F.R. § 404.906(b)(2). Plaintiff avers, that the SDM assessed plaintiff's physical impairment; and in accordance with the model, no medical opinion was obtained at that level of review. Relying on *Stratton v. Astrue*, 987 F. Supp. 2d 135 (D. N.H. 2012), plaintiff advances that SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The ALJ ... "is responsible for deciding the ultimate legal question whether a listing is met or equaled, "however "longstanding policy requires that the judgment of a physician designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] ... must be received into the record as expert opinion evidence and given appropriate weight.

1996 WL 374180, at *3; *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a Plaintiff's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 404.1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made."); *Modjewski v. Astrue,* 2011 WL 4841091, at *1 (E.D. Wis. 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of

impermissibly playing doctor).  According to plaintiff, this expert opinion

requirement can be satisfied with a signature on the Disability Determination

Transmittal Form, but there was no Disability Determination and Transmittal Form

signed by a medical advisor as to plaintiff's physical impairments here.

Plaintiff further argues that the great weight of authority holds that a record

lacking any  medical advisor opinion on equivalency requires a remand.  *See e.g.*,

*Leach*, 2013 WL 3946068, at *12 (collecting cases); *See also*, *Maynard v.

Comm'r*,  2012 WL 5471150  (E.D. Mich. 2012) ("[O]nce  a hearing is requested,

SSR 96-6p is applicable, and requires a medical opinion on the issue of

equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (A

medical opinion on the issue of equivalence is required, regardless of whether the

SDM model is implicated.).  Consequently, plaintiff argues that remand is

warranted here to obtain a medical opinion as to equivalency at Step III. (Dkt. 17,

Pg ID 892-895).

Plaintiff also argues that the ALJ erroneously found plaintiff's testimony of

disabling pain not credible.  If not for this error, a proper assessment under the

circuit law would support plaintiff's disabling pain.  Plaintiff maintains that the

overall record contains numerous objective findings supporting plaintiff's pain,

including (1) decreased ROM of the lumbar and cervical spines; (2) tenderness

throughout the spine; (3) muscle spasms throughout the spine; (4) reduced muscle

6

strength; (5) an MRI confirming L5-S degenerative disc disease with osteophyte complex causing severe spinal canal stenosis, right neuroforaminal stenosis, and moderate left neuroforaminal stenosis, with positive Patrick's sign on examination, and diminished sensation of the left foot; and (6) cervical x-ray confirming hardware lucency, prompting Dr. Clayborn to opine that this and the pseudoarthrosis were accountable for plaintiff's pain. Although the ALJ did indeed note some of the objective evidence discussed supra, plaintiff argues she erroneously discredited plaintiff's disabling pain for the reasons stated below.

First, citing to a note from plaintiff's neurosurgeon one week after her cervical fusion, the ALJ found plaintiff's testimony of disabling pain incredible because her pain "improved and was controlled on medication." Yet, plaintiff points out that just three days after the referenced office note, the same neurosurgeon sent plaintiff to the emergency department for her uncontrolled pain. Moreover, according to plaintiff, the overall record does not support the ALJ's conclusion that plaintiff's pain was improving and was controlled by medication. Plaintiff reported to various providers that the pain medications and muscle relaxers she was prescribed provided little to no help. Furthermore, her numerous visits to the emergency department support her testimony of chronic, uncontrolled pain. Plaintiff also notes that she participated in outpatient and home physical therapy, and received a cervical medial branch block for her pain, all without

7

significant relief.

Second, the ALJ found plaintiff incredible because an emergency department physician noted that plaintiff's requests for Dilaudid and Oxycodone "may be drug seeking behavior." However, viewed in light of the overall record, plaintiff contends that her providers, including pain management doctors and neurologists, did not suggest that she was malingering or exhibiting drug-seeking behavior.

Third, plaintiff contests the ALJ's finding that her testimony of disabling pain was incredible because she was noncompliant with physical therapy. Plaintiff argues and notes that the ALJ acknowledges in the decision that she reported that she could not continue physical therapy due to lack of insurance. Plaintiff contends that, under SSR 96-7p, the ALJ must consider inability to afford care when assessing claimant's credibility.

Plaintiff also argues that the ALJ erred in finding her incredible because she returned to work after her alleged onset date (AOD) and was making substantial gainful activity (SGA) during the fourth quarter of 2012. Plaintiff contends that this was an unsuccessful work attempt. Plaintiff lost her job within six months of her AOD, because, as she testified, she could not function from the anxiety and emotional factors at work. According to plaintiff, the record supports her contentions as her treating and examining physicians opined that her chronic pain

8

had an element of depression and anxiety involved.

Likewise, plaintiff argues that the ALJ erroneously found plaintiff's testimony of disabling depression and anxiety not credible. First, the ALJ cited plaintiff's gaps in treatment as grounds she was not credible. However, plaintiff asserts that the record supports that she had problems attending her monthly mental health appointments due to lack of transportation and insurance.

Next, plaintiff challenges the ALJ's conclusion that she was incredible because she "lives alone and functions pretty well." The ALJ noted that plaintiff reported she "cooks some, drives, goes out alone, and shops some." However, plaintiff urges that these minimal activities of daily living do not support the ability to work on a full-time basis, nor are they inconsistent with plaintiff's testimony. *See* 20 CFR § 404.1573(c). More particularly, plaintiff contends that the ALJ failed to consider SSR 96-7p, which states "[t]he individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms."

In sum, according to plaintiff, the ALJ's credibility assessment is erroneous and fails to properly consider many of the factors of SSR 96-7p, such as, daily activities; medications; effectiveness of treatment; and measures used to relieve pain. Thus, remand should be warranted. (Dkt. 17, Pg ID 895-904).

Plaintiff also argues that the ALJ improperly rejected the opinion of her treating physician. Plaintiff argues that, in arriving at the RFC, it is clear the ALJ did not rely upon any medical opinion as the file was reviewed only by a single-decision-maker.  Furthermore, while the ALJ states that she did not give the medical source statement ("MSS") controlling weight since it was not consistent with the medical of record, she failed to assign weight to the opinion and essentially rejects the entire opinion.  Plaintiff argues that, by rejecting the treater's opinion, the ALJ found that plaintiff could perform her RFC without any supporting medical opinions, thus impermissibly acting as her own expert.  "While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, [s]he is not permitted to make his own evaluations of  the medical findings."  *Bowman v. Comm'r of Soc.Sec.*, 2009 U.S. Dist. LEXIS 87920, *12-13 (S.D. Ohio Sept. 24, 2009).  Accordingly, the ALJ's erroneous rejection of the plaintiff's treating physician's opinion and resulting erroneous RFC is not supported by substantial evidence, therefore reversal and remand is warranted. (Dkt. 17, Pg ID 904-908).

Finally, plaintiff argues that the ALJ failed to properly analyze the limiting effects of plaintiff's obesity.  Plaintiff argues that even if the ALJ properly found obesity was a non-severe impairment (plaintiff maintains otherwise), she committed error by failing to discuss the effects of plaintiff's obesity because an

10

ALJ must consider the limitation of obesity at all steps of the sequential process. *See* 20 C.F.R. § 404.1523 (even non-severe mental impairments must be considered in combination for a holistic RFC). Accordingly, remand is warranted for proper consideration of plaintiff's extreme obesity. (Dkt. 17, Pg ID 908-909).

      C.      <u>The Commissioner's Motion for Summary Judgment</u>

Regarding the ALJ's finding, without medical opinion support, that plaintiff's impairments did not equal listing 1.04, the Commissioner notes that courts have held that such error can be harmless where the "evidence does not demonstrate the possibility that she could meet the criteria of a listed impairment." *Leveque v. Colvin*, 2015 WL 4601156, at *6 (E.D. Mich. Jul. 15, 2015) (rec. dec., aff'd Sept. 23, 2015). Thus, the Commissioner contends that plaintiff's argument turns on whether she has identified findings in the record showing that her impairment(s) "meets all of the specified medical criteria" for listing 1.04. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If not, according to the Commissioner, "[t]he Court will not disturb the ALJ's finding on medical equivalence." *Brown v. Comm'r of Soc. Sec.*, No. 1:14-cv-236, 2015 WL 1431521, at *4 (W. D. Mich. Mar. 27, 2015).

Part A of listing 1.04 provides:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet

> arthritis, vertebral fracture), resulting in
> compromise of a nerve root (including the cauda
> equina) or the spinal cord. With: A. Evidence of
> nerve root compression characterized by
> neuroanatomic distribution of pain, limitation of
> motion of the spine, motor loss (atrophy with
> associated muscle weakness or muscle weakness)
> accompanied by sensory or reflex loss and, if there
> is involvement of the lower back, positive
> straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

The Commissioner argues that plaintiff fails to satisfy the nerve root requirement,

notwithstanding her September 2012 MRI results, which, "show[ ]diffuse disc

spur complex right foraminal component and compression of exiting right C7

nerve root."  According to the Commissioner, this MRI precedes plaintiff's

November 2012 cervical surgery, and all imaging studies conducted after the

surgery do not show nerve root compression.  Thus, because the surgery was

performed about two months after her alleged onset date and the evidence after the

surgery does not show nerve root compression, plaintiff's pre-surgery MRI results

cannot satisfy the listing's duration criteria.  For this reason alone, the

Commissioner argues that plaintiff's listing argument fails.

   Moreover, the Commissioner argues that the record also does not support

plaintiff's claim that her neck impairment satisfies other listing criteria. As stated

before, apart from nerve root compromise, listing 1.04A also requires

"neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss

12

(atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Of these, plaintiff points to some evidence of limited motion of the spine, but the Commissioner maintains that her claim that there is also evidence establishing the requisite motor loss and sensory deficits is without merit.

Concerning motor loss, plaintiff relies on one isolated instance where a doctor noted "subtle" weakness in her left triceps, but the record otherwise overwhelmingly shows that she exhibited no strength deficits and intact motor function throughout the period at issue. The Commissioner argues that even crediting plaintiff's isolated finding of "subtle" weakness, she does not come close to showing decreased strength for twelve continuous months.

The Commissioner contends that plaintiff's attempt to establish the requisite sensory deficits is even less convincing. Plaintiff only points to a note where she subjectively admitted to paresthesia in the distal portion of her fingers, but this is not an objective finding. Further, in the very same note, the attending doctor identified "no frank loss of sensation." Plaintiff's other records also consistently identify no sensory abnormalities, and her EMG study was normal. Overall, as it concerns both strength and sensation, plaintiff was repeatedly described as neurologically intact. On these bases, the Commissioner asks the Court to find that the ALJ's failure to obtain a medical opinion on medical equivalence is harmless

13

error, and therefore to affirm the ALJ's finding that plaintiff's impairments did not meet or equal listing 1.04. (Dkt. 18, Pg ID 925-929).

The Commissioner also disagrees with plaintiff's challenges to the ALJ's credibility findings, arguing credibility determinations are within the province of the ALJ. *See Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) (per curiam). A reviewing court does not make its own credibility determinations or resolve conflicts in the evidence. *Walters v. Comm'r of Social Security*, 127 F.3d 525, 528 (6th Cir. 1997) (citation omitted). The Commissioner's credibility determination is reviewed under a "highly deferential" "substantial evidence" standard of review. *Ulman v. Comm'r of Social Security*, 693 F.3d 709, 714 (6th Cir. 2012). "Upon review, [the Court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity… of observing a witness's demeanor while testifying." *Jones v. Comm'r of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003).

At the outset, plaintiff claims that the "record contains numerous objective findings supporting" her complaints of pain. Yet, the Commissioner argues whether there is evidence in the record to support plaintiff's allegations is not a basis for remand; the relevant question is whether substantial evidence supports the ALJ's decision, or, as it concerns plaintiff's instant argument, the ALJ's

credibility determination. *See Gooch*, 833 F.2d at 592; *see also Jones*, 336 F.3d at 477 ("Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ").  Apart from considering the largely normal findings and other relevant medical evidence, the Commissioner insists that the ALJ here provided several specific reasons for finding that plaintiff was not entirely credible and the evidence supports the credibility analysis.

For instance, while plaintiff alleged disabling pain, the ALJ cited a treatment note where plaintiff otherwise stated that her "pain was improved and controlled on pain medication."  Although plaintiff claims that the ALJ cherry picked this note from an abundance of contrary evidence, the Commissioner counters that other subsequent notes in the record also suggest plaintiff's medications and treatment were helpful.  In any case, the Commissioner argues that, even if the ALJ erred in considering plaintiff's report that her pain was improved and controlled with medications, remand is not appropriate since the ALJ provided other more probative reasons for declining to fully adopt plaintiff's allegations. *See Ulman*, 693 F.3d at 714 ("[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed

15

harmless and does not warrant reversal.").

Specifically, the Commissioner argues that "the record suggests some questionable drug-seeking behavior."  Based on multiple notes to this effect, the ALJ reasonably determined that plaintiff exhibited drug-seeking behavior, which undermined her allegations.  The Commissioner also argues that plaintiff's non-compliance with physical therapy was not necessarily due to lack of insurance.  According to the Commissioner, her discharge note states that she simply "did not show or call[] for any further physical therapy visits" after her initial two appointments.  The Commissioner maintains that plaintiff did not report complications with her insurance or inability to afford treatment to her therapy provider.

The ALJ also found that plaintiff's testimony that she worked for only a few days after her alleged onset date was inconsistent with a note where she stated that she stopped working in March 2013, several months after her alleged onset date, and her earnings records showing substantial gainful activity earnings in the fourth quarter of 2012.  Concerning the inconsistency between her testimony and the evidence, plaintiff attributes the discrepancy to her alleged memory problems. But this does not change the fact that her testimony was inconsistent with the record and, as a result, diminished her credibility. Also, the Commissioner refutes plaintiff's claim that the ALJ's characterization of her work activity after her

alleged onset date as an "unsuccessful work attempt " is determinative.  Although plaintiff is correct that her work activity is not dispositive, it remains relevant to the ALJ's credibility analysis. *See Morrison v. Comm'r of Soc. Sec.*, 2014 WL 4658702, at *13 (E. D. Mich. Sept. 17, 2014) (affirming ALJ's consideration of claimant's part-time work activity as adverse credibility factor); *Hudgins v. Comm'r of Soc. Sec.*, 2014 WL 3123122, at *12 (E. D. Mich. Jul. 8, 2014).

The Commissioner argues that the ALJ properly relied on plaintiff's daily activities in finding that she was not completely disabled. The ALJ noted that she lived alone, functioned independently, performed some cooking, shopped, went out alone, drove and attended her medical appointments.  Notwithstanding plaintiff's argument to the contrary, the Sixth Circuit has found that similar activities supported an adverse credibility assessment. *See Berry v. Comm'r of Soc. Sec.*, 289 F. App'x 54, 56 (6th Cir. 2008).

Lastly, the Commissioner contends that the ALJ properly considered the gap in mental health treatment as well as her failure to attend multiple appointments.  Notwithstanding plaintiff's claimed lack of insurance and difficulty with transportation, the Commissioner notes that she remained capable of attending her other medical appointments despite these problems.

The Commissioner argues that, these reasons, taken together and combined with the normal physical findings the ALJ cited in her decision, substantially

support the ALJ's adverse credibility assessment. Therefore, plaintiff's argument for remand based on the ALJ's analysis should be rejected. (Dkt. 18, Pg ID 930-936).

In addressing plaintiff's contention that the ALJ improperly evaluated the medical source statement completed by one of her doctors from Henry Ford, the Commissioner notes that plaintiff does not challenge the ALJ's finding that the opinion was inconsistent with the evidence. Instead, she only argues that the ALJ erred because she failed to assign the opinion any specific weight after finding that it was not entitled to controlling weight. The Commissioner concedes that Social Security Ruling (SSR) 96-2p states that, after finding that an opinion is not entitled to controlling weight, the ALJ is required to consider it under the regulatory factors set forth in 20 C.F.R. §§ 404.1527 & 416.927. Yet, the analysis does not stop there.

According to the Commissioner, whether an opinion is consistent with the evidence is also one of the factors listed in the regulations, *see* 20 C.F.R. §§ 404.1527(b)(4) & 416.927(b)(4), and the Sixth Circuit has affirmed an ALJ's decision to discredit a treating doctor's opinion based on this factor alone. *See Gaskin v. Comm'r of Soc. Sec.*, 280 Fed. App'x 472, 475 (6th Cir. 2008). Additionally, the ALJ is not required to expressly discuss all regulatory factors in her decision. *Francis v. Comm'r of Soc. Sec.*, 414 Fed. App'x 802, 804 (6th Cir.

18

2011).

Moreover, the Commissioner argues that the ALJ did not act "as her own expert," as plaintiff claims. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726-27 (6th Cir. 2013); *Manso–Pizarro v. Sec'y of Health & Human Servs.,* 76 F.3d 15, 17 (1st Cir. 1996) ("where the medical evidence shows relatively little physical impairment, an ALJ [ ] can render a commonsense judgment about functional capacity even without a physician's assessment"). For all of these reasons, the Commissioner contends a remand is unnecessary. (Dkt, 18, Pg ID 936-938).

Plaintiff's final argument is that the ALJ failed to consider the effects of her obesity. Plaintiff does not point to any specific evidence showing that her obesity, either singly or combined with her other impairments, affected her RFC in any more significant way than the ALJ found. According to the Commissioner, this is fatal to her claim. *See Boley v. Comm'r of Social Sec.*, No. 11-CV-15707, 2013 WL 1090531, at *4 (E.D. Mich. Mar. 15, 2013). (Dkt. 18, Pg ID 938-939).

D.     Plaintiff's Reply Brief

Plaintiff counters the Commissioner's contention that the ALJ's failure to obtain a medical opinion concerning medical equivalence is harmless error, with authority suggesting this failure is in fact, reversible error. The Commissioner relies on *Leveque v. Colvin,* 2015 WL 4601156, at *6 (E.D. Mich. July 31, 2015),

19

stating, "Plaintiff 'does not demonstrate the possibility that she could meet the criteria of a listed impairment.'"  *Id.*  In *Leveque,* the plaintiff asserted that there were three listings that should have been assessed; however, this Court found that the record did not contain the requirements of the listings.  2015 WL 4601156, at *6.  In this case, however,  plaintiff maintains that she has shown that the record contained all requirements of listing 1.04(A).  The Commissioner does not contend that all of the requirements of listing 1.04(A) are not present; but rather takes issue with the date of the findings, the frequency of the findings, and the subjectivity of the findings.   However, the Commissioner's assessment misses the point according to plaintiff.  *Leveque,* only requires the "possibility" that plaintiff could meet the criteria of the listing, which plaintiff has demonstrated by citing to all requirements of listing 1.04(A) that are supported by the record.

Significantly, the *Leveque* court cites to *Reynolds v. Comm'r of Soc. Sec.,* which states, "[a]n administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."  424 F. App'x 411, 415 (6th Cir. 2011). While the ALJ here does compare some of the medical evidence with the requirements of the listing, plaintiff argues that the assessment is incomplete and erroneous. Therefore, plaintiff maintains that reversal and remand is warranted to obtain a medical opinion on medical

20

equivalency since the record appears to contain all the requirements of listing 1.04(A).  (Dkt. 19, Pg ID 941-942).

Plaintiff suggests that the Commissioner's conclusion that the ALJ properly found plaintiff's "pain was improved and controlled on pain mediation" was due to the Commissioner's improper attempt to re-weigh the evidence. *Crisp v. Secretary of HHS*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).  Plaintiff also refutes the Commissioner's suggestion that this is harmless error, arguing that the ALJ made numerous errors in her credibility assessment, addressed in plaintiff's opening brief.

Contrary to the ALJ's contention that plaintiff "lives alone and functions pretty well," she in fact gets assistance from others, has difficulty with household chores, and takes additional time to perform activities of daily living because she requires numerous breaks.  Therefore, plaintiff maintains that the ALJ's credibility determination is not supported by the record, and the Commissioner's citations to this Circuit's case law does not show that the ALJ's credibility determination was proper.  Plaintiff argues that the ALJ made an erroneous credibility determination warranting reversal and remand. (Dkt. 19, Pg ID 943-944).

Plaintiff also renews her argument that "the ALJ improperly rejected the opinion of Dr. Whitlow [] thus warranting reversal and remand." (Dkt. 19, Pg ID

21

944-946).

Finally, plaintiff outlined the objective medical evidence supporting that her extreme obesity aggravated her chronic pain throughout her spine, and argues that substantial evidence does not support a conclusion that she can perform work at the light exertional level which requires "a good deal of walking or standing" nor "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Accordingly, remand is warranted for proper consideration of plaintiff's extreme obesity. (Dkt. 19, Pg ID 946-947).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a

23

certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial

24

evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.   Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status, and to minor or disabled children of deceased qualifying wage earners; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984); 20 C.F.R. §404.350(a).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is

> expected to last for at least twelve months, and the
> severe impairment meets or equals one of the
> impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age,
> education or work experience.
>
> Step Four:  If the claimant is able to perform his or her
> past relevant work, benefits are denied without further
> analysis.
>
> Step Five: Even if the claimant is unable to perform his
> or her past relevant work, if other work exists in the
> national economy that plaintiff can perform, in view of
> his or her age, education, and work experience, benefits
> are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

   "Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir.

2006).  At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

In this case, the single decisionmaker ("SDM") model was used pursuant to 20 C.F.R. §§ 404.1406(b)(2), 404.906(b)(2).  This regulation provides streamlined procedures as an experiment, in which State Agency disability examiners may decide cases without documenting medical opinions from State Agency medical consultants.  The "single decisionmaker model" was an experimental modification of the disability determination process that happens to have been used in Michigan.  *See Leverette v. Comm'r*, 2011 WL 4062380 (E.D. Mich. 2011), *adopted by* 2011 WL 4062047 (E.D. Mich. 2011).  This experiment eliminated the reconsideration level of review and allowed claims to go straight from initial denial to ALJ hearing.  *Id*.  Most significantly, it allowed the state agency employee (i.e. the single decisionmaker) to render the initial denial of benefits without documenting medical opinions from the state agency medical

28

consultants. *Id.*, citing 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). The Programs Operations Manual System (POMS) requires it to "be clear to the appeal-level adjudicator when the SSA-4734-BK [the PRFC assessment form] was completed by an SDM because SDM-completed forms are not opinion evidence at the appeal levels." POMS DI § 24510.05. Plaintiff's physical impairments were evaluated by an SDM, who concluded that plaintiff's impairments were not disabling. (Dkt. 13-3, Pg ID 141). Thus, no medical opinion was obtained, in accordance with this model.

While the ALJ did not rely on the opinion of the SDM, which would have been wholly improper, the lack of any medical opinion on the issue of equivalence is still an error requiring remand. As set forth in *Stratton v. Astrue*, 987 F. Supp. 2d 135, 147 (D.N.H. 2012), SSR 96-6p describes the process by which ALJs are to make step-three determinations:

> The administrative law judge ... is responsible for deciding the ultimate legal question whether a listing is met or equaled. As trier of the facts, an administrative law judge ... is not bound by a finding by a State agency medical or psychological consultant or other program physician or psychologist as to whether an individual's impairment(s) is equivalent in severity to any impairment in the Listing of Impairments. However, *longstanding policy requires that the judgment of a physician* (or psychologist) designated by the Commissioner *on the issue of equivalence on the evidence* before the administrative law judge ... *must be received into the record as expert opinion evidence and given appropriate weight.*

29

1996 WL 374180, at *3 (emphasis added); *See also, Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. Nov. 22, 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)); *Modjewski v. Astrue*, 2011 WL 4841091, at *1 (E.D. Wis. Oct. 21, 2011) (warning that an ALJ who makes a step-three equivalence determination without expert-opinion evidence runs the risk of impermissibly playing doctor).

The *Stratton* court further explained that SSR 96-6p treats equivalence determinations differently from determinations as to whether an impairment meets a listing, requiring expert evidence for the former, but not the latter. *Stratton*, 987 F. Supp. 2d at 148(citing *Galloway v. Astrue*, 2008 WL 8053508, at *5 (S.D. Tex. 2008) ("The basic principle behind SSR 96-6p is that while an ALJ is capable of reviewing records to determine whether a claimant's ailments meet the Listings, expert assistance is crucial to an ALJ's determination of whether a claimant's ailments are equivalent to the Listings.").  The expert opinion requirement can be satisfied with a signature by a medical advisor on the Disability Determination Transmittal Form.  *Stratton*, 987 F. Supp. 2d at 148(The

expert-opinion evidence required by SSR 96-6p can take many forms, including "[t]he signature of a State agency medical ... consultant on an SSA-831-U5 (Disability Determination and Transmittal Form)."")); *Field v. Barnhart*, 2006 WL 549305, at *3 (D. Me. Mar. 6, 2006) ("The Record contains a Disability Determination and Transmittal Form signed by Iver C. Nielson, M.D.... discharging the commissioner's basic duty to obtain medical-expert advice concerning the Listings question."), *adopted by* 2006 WL 839494 (D. Me. Mar. 30, 2006). In the instant record, there is no Disability Determination and Transmittal Form signed by a medical advisor as to plaintiff's physical impairments. (Dkt. 6-3, Pg ID 143, Dkt. 6-7, Pg ID 234-245).

The great weight of authority[1] holds that a record lacking any medical advisor opinion on equivalency requires a remand. *Stratton*, 987 F. Supp. 2d at 149-150 (collecting cases); *see e.g., Caine v. Astrue*, 2010 WL 2102826, at *8 (W.D. Wash. Apr. 14, 2010) (directing ALJ to obtain expert-opinion evidence on equivalence where none was in the record), *adopted by* 2010 WL 2103637 (W.D. Wash. 2010); *Wadsworth v. Astrue*, 2008 WL 2857326, at *7 (S.D. Ind. 2008) (holding that where record included no expert-opinion evidence on equivalence, "[t]he ALJ erred in not seeking the opinion of a medical advisor as to whether

---

[1] In *Stratton*, the court noted that a decision from Pennsylvania "stands alone" in determination that 20 C.F.R. § 404.906(b) "altered the longstanding policy that an ALJ is required to seek a medical opinion on the issue of equivalence." *Stratton*, 987 F. Supp. 2d. at 150 (citing *Oakes v. Barnhart*, 400 F. Supp. 2d 766, 776 (E.D. Pa 2005)).

31

Mr. Wadsworth's impairments equaled a listing").  While the government has argued in other cases that courts in this district have concluded that the ALJ need not obtain expert opinion evidence in cases involving an SDM, *see Gallagher v. Comm'r*, 2011 WL 3841632 (E.D. Mich. 2011), *adopted by* 2011 WL 3841629 (E.D. Mich. Aug. 30, 2011), and *Timm v. Comm'r*, 2011 WL 846059 (E.D. Mich. 2011), *adopted by* 2011 WL 845950 (E.D. Mich. 2011), the undersigned does not find these cases persuasive.  In both cases, the court concluded that because the regulations permitted an SDM to make a disability determination without a medical consultant, the ALJ is therefore, also permitted to do so where the "single decisionmaker" model is in use.  Yet, notable appellate authority suggests that nothing about the SDM model changes the ALJ's obligations in the equivalency analysis.  *See Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue.") (citing 20 C.F.R. § 1526(b)); *Retka v. Comm'r of Soc. Sec.*, 1995 WL 697215, at *2 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made.") (citing 20 C.F.R. § 416.926(b)).

Based on the foregoing, the undersigned cannot conclude that the ALJ's obligation to consult a medical expert in making an equivalency determination is altered in cases where the SDM model is used.  While the SDM is not required to

obtain a medical opinion in cases involving physical impairment, as noted in *Timm* and *Gallagher*, an ALJ's obligations are not modified.  Therefore, it makes little sense to conclude that the ALJ is likewise relieved from obtaining an expert medical opinion in SDM cases regarding equivalence.  In so concluding, the undersigned's analysis does not disturb the SDM model, which leaves *the SDM discretion* as to whether to consult a medical expert about physical impairments.  Rather, the analysis leaves intact the requirements imposed *on an ALJ* in making an equivalency determination.  *See also*, *Maynard v. Comm'r*, 2012 WL 5471150 (E.D. Mich. 2012) ("[O]nce a hearing is requested, SSR 96-6p is applicable, and requires a medical opinion on the issue of equivalence."); *Harris v. Comm'r*, 2013 WL 1192301, *8 (E.D. Mich. 2013) (a medical opinion on the issue of equivalence is required, regardless of whether the SDM model is implicated).

In this case, the government argues that the ALJ's failure to consult a medical expert in making an equivalency determination is harmless error because the evidence does not demonstrate the possibility that she could meet the criteria of a listed impairment.  *See Leveque v. Colvin*, 2015 WL 4601156, at *6 (E.D. Mich. Jul. 15, 2015) (rec. dec., aff'd Sept. 23, 2015).  Notwithstanding this argument, and unlike the plaintiff in *Leveque, supra,* the undersigned finds that plaintiff has advanced at least some evidence that she meets or equals the provisions of listing 1.04. (Dkt. 13-7, Pg ID 323; 13-8, Pg ID 448, 461, 527, 641;

33

13-9, Pg ID 670, 692, 701).  Moreover,

> it is not the prerogative of this Court, the ALJ, or
> Defendant to draw conclusions about the raw
> medical data and how Plaintiff's severe
> impairments may interact with the others. Stated
> differently, "[w]hile there is support for the
> proposition that such an error can be harmless," as
> urged by Defendant, "[n]either the ALJ nor this
> court possesses the requisite medical expertise to
> determine if [Plaintiff's] impairments ... in
> combination equal one of the Commissioner's
> listings." *Harris v. Comm'r of Soc. Sec.*, 2013 WL
> 1192301 (E.D. Mich. Mar. 22, 2013) (quotation
> omitted).

*Sheeks v. Commr. of Soc. Sec.*, 2015 WL 753205, at *7 (E.D. Mich. Feb. 23,

2015).

For these reasons, the undersigned concludes that this matter must be

remanded so that the ALJ can obtain the opinion of a qualified medical advisor on

the issue of equivalence as to plaintiff's physical impairments.  In the view of the

undersigned, given that the opinions of a medical advisor must be obtained,

plaintiff's credibility will necessarily have to be re-assessed in full after such an

opinion is obtained.

A related problem in this case is the ALJ's RFC determination.  Here, the

ALJ rejected the opinions of plaintiff's treating physicians regarding her

functional limitations and thus, did not use these opinions to formulate the RFC.

(Dkt. 13-2, Pg ID 80).  As noted above, only the SDM completed a physical RFC

assessment of plaintiff and no consulting physician examined plaintiff or offered an opinion of plaintiff's RFC. The ALJ, therefore, apparently arrived at her RFC based on her own analysis of the medical evidence in the record, given that there are no other medical opinions in the record.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008) ("The ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r*

*of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011 WL 3566009 (S.D. Ohio Aug. 12, 2011).

The undersigned recognizes that the final responsibility for deciding the RFC "is reserved to the Commissioner."  20 C.F.R. § 404.1527(d).  Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data.  *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F. Supp.2d 908, 912 (N.D. Ohio 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

Although ultimately a finding of no disability may be appropriate in this case, substantial evidence does not exist on the record to support the current RFC determination because there is no RFC determination by a consulting physician or expert medical advisor. Thus, the ALJ's RFC determination (at least in part) was not based on any medical opinion but was apparently formulated based on her own independent medical findings. Under these circumstances, the undersigned suggests that a remand is necessary to obtain a proper medical source opinion regarding plaintiff's physical impairments. Again, given the need for remand to obtain an expert medical opinion regarding plaintiff's physical impairments, plaintiff's credibility and the opinions of her treating physicians will necessarily have to be re-evaluated on remand.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local

37

Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 17, 2017                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 17, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to counsel of record.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov